# UNITED STATES BANKRUPTCY COURT
# FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

In re:

LINDA R. CLARY,

Debtor.

Case No. 08-15621-RGM
(Chapter 7)

## MEMORANDUM OPINION

THIS CASE was before the court on the motions for relief from stay filed by Navy Federal Credit Union (Docket Entry 17) and Countrywide Home Loans, Inc. (Docket Entry 22).

The debtor owns her home which is located on Henderson Road in Clifton, Virginia, and is a co-owner together with her former spouse, Matthew A. Clary, III, of the contiguous property which has a street address on Wolfe Valley Drive also in Clifton, Virginia. The debtor scheduled the Henderson property with a value of $800,000 subject to debts of $823,135. She scheduled the Wolfe Valley Drive property with a fair market value of $100,000 and no debt. Countrywide holds the first deed of trust on the Henderson Road property. In its motion for relief from stay, it stated that its payoff was $769,925. Navy Federal Credit Union holds the second trust on the Henderson Road property and stated its payoff was $105,946.28. All the parties agree that the Fairfax County tax assessment is a little over $800,000. Both properties are slightly larger than five acres. The Henderson Road property is improved with a single family residence in which the debtor resides. The Wolfe Valley Drive property is not improved. Because of the impact of an environmental statute, it is not buildable as presently platted. Mr. Clary asserts that if there is a property line adjustment between the two properties, the Wolfe Valley Drive property will become a buildable lot and will have a value of approximately $575,000.

1

Mr. Clary and the debtor were divorced in 2005. They entered into a Support and Property Settlement Agreement on February 5, 2005. The agreement provided that the Henderson Road property would become the sole property of the debtor. Both parties retained an ownership interest in the Wolfe Valley Drive property. The parties were to agree on a lot line adjustment and sell the Wolfe Valley Drive property for no less than $595,000. The net proceeds were to be divided evenly between the parties except that Mr. Clary was to pay the debtor $119,000 from the sale. If the sale was not accomplished by February 1, 2008, he was to commence monthly payments of $3,000 against the $119,000 obligation. To date, if all payments have been made, the balance due to the debtor is $89,000 and would be due upon sale of the Wolfe Valley Drive property.

It is clear that there is no equity in the Henderson Road property upon which both lenders hold a deed of trust. While Countrywide is probably fully secured, Navy Federal Credit Union is probably undersecured. No adequate protection was proffered to protect either lender, and, particularly, Navy Federal Credit Union, from any delay occasioned by the continuance of the automatic stay.

Assuming a lot line adjustment would improve the value of the Wolfe Valley Drive property, the improvement in value would apparently not inure to the benefit of Countrywide or Navy Federal Credit Union. Neither has a lien on that property. Mr. Clary filed a letter offer from a prospective purchaser. The letter was dated November 15, 2005. The proposed purchase price was $575,000 but was subject to a lot line adjustment and approval of the homeowner's association to construct a home and utilize the subdivision private road for ingress and egress. To date, more than three years after the letter, no lot line adjustment has been approved.

The trustee and the debtor consented to the relief requested. Mr. Clary objected to the relief

requested. He wants the trustee to effect the property line adjustment and thereby improve the value of the Wolfe Valley Drive property.

Relief is appropriate in these circumstances. The co-owner of the contiguous property, Mr. Clary, seeks to delay the foreclosure of the Henderson Road property in order to improve the value of the contiguous Wolfe Valley Drive property. The improvement in value would assist him as much as the estate but would hurt the two secured lenders, particularly Navy Federal Credit Union. Required adequate assurance payments to prevent a diminution in the two lenders' position would be costly to the estate and without the certainty of an approved lot line adjustment in the near future, there is no reason to believe that the detriment to the estate would be less than the benefit that could be obtained.

Mr. Clary presents the matter as though the foreclosure of the Henderson Road property would eliminate the ability to achieve a lot line adjustment and thereby improve the value of the Wolfe Valley Drive property. While it may be true that he has certain contractual benefits from the Support and Property Settlement Agreement with the current owner, the debtor, that are advantageous to him, it does not follow that a lot line adjustment becomes impossible with the foreclosure of the Henderson Road property. In fact, if there is such a significant improvement in value to the Henderson Road property, he estimates more than $400,000, and if the lot line adjustment would not, as required by the Support and Property Settlement Agreement, adversely impact the Henderson Road property, there is no reason to believe that a future owner of the Henderson Road property could not be interested in a lot line adjustment. It would not be free, but it would not be impossible. Indeed, if one or both of the lenders believed that that option is promising, there is no reason to believe that they would not participate in an arrangement to obtain

further value from the properties. In all likelihood, Navy Federal Credit Union will either acquire the property or lose its collateral to Countrywide.

Mr. Clary states that the trustee will not be able to sell the Wolfe Valley Drive property because as a co-owner, the requirements of §363(h) cannot be satisfied. He notes that the sale of the property would trigger his obligation to pay the debtor the balance due under the Support and Property Settlement Agreement, presently $89,000 and diminishing $3,000 a month. The benefit to the estate may well far outweigh Mr. Clary's admitted obligation to pay the debtor notwithstanding that the obligation to pay may be accelerated. While this may well be a consideration in resolving any request by the trustee to sell both the debtor's and Mr. Clary's in the Wolfe Valley Drive property, the outcome is not pre-ordained. It is far from certain that Mr. Clary has a veto over the sale of the property.

It is ultimately within the trustee's discretion as to how to administer the estate. Mr. Clary wishes the trustee to administer the estate differently. The trustee's decisions in this instance are well within his discretion and the motions should be granted.

Alexandria, Virginia
November 26, 2008

/s/ Robert G. Mayer
Robert G. Mayer
United States Bankruptcy Judge

14760

Copies to:

Robert R. Weed
Gordon P. Peyton

Matthew A. Clary, III
10114 Farrcroft Drive
Fairfax, Virginia 22030